# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERSON SISON,<br><br>               vs.<br><br>LARRY SMALL,<br><br>               Plaintiff,<br><br><br><br>               Defendant. | Case No. 09cv1185 BEN (WVG)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Before this Court is Jefferson Sison's petition for a writ of habeas corpus under 28 U.S.C. § 2254. On December 30, 2009, Magistrate Judge Gallo filed a Report and Recommendation, recommending that the Petition be denied. Petitioner filed Objections to the Report and Recommendation. After reviewing the Report and Recommendation and Petitioner's Objections, the Court **ADOPTS** the Report and Recommendation and **DENIES** the Petition.

## II. FACTS

A summary of the facts follows:[1]

**1.** *Arnquist Carjacking*

On December 28, 2004 Steven Arnquist drove a Honda Civic to a Spring Valley,

---

[1] The following facts are taken from the California Court of Appeal's decision in *People v. Martin*, Case No. D047341, 2007 WL 3349099, at *1-6 (Cal. App. 4th Nov. 13, 2007) and are not in dispute.

- 1 -

California shopping center. While stopped at an automated teller machine, Arnquist was seated in the driver's seat preparing to sign a check for deposit while Taniesha Taylor, Arnquists's passenger, stood outside the car next to him.

Suddenly, two men ran up to Arnquist and Taylor and attempted to steal the Honda. One man hit Arnquist with a gun, while the other grabbed Taylor's hair, held a gun to her head, pulled her to the back of the car and ordered her to get in the trunk. Only after a witness began honking his car horn and flashing his headlights was Taylor released. The assailants took the car, leaving the victims behind.

### 2. *King Attempted Carjacking*

On the evening of March 4, 2004, Robbie Martin (Petitioner's co-defendant at trial) arranged to meet with Benjamin King, from whom he was purchasing anabolic steroids. Sitting in his vehicle with the motor running, King saw two men approach from the rear. One man, whom King later identified as Martin, walked up to the passenger side of the vehicle and knocked on the window. The man stepped back, pulled a bandana over his face, opened the truck, stuck a gun in King's face and ordered King to get out of the car.

At the same time, the other man, whom King later identified as Petitioner, opened the driver's side door and pistol-whipped King. King released the emergency brake and floored the gas pedal. As the vehicle began to move, Martin fired a shot at King. The bullet hit the post behind King's head, and shrapnel struck King in the shoulder. Then Petitioner fired a shot at King, but missed. King drove away.

### 3. *Luna Murder*

On April 8, 2004, Francisco Luna had told his cousin that he was going to look at a gun he wanted to buy. Late that night Luna, Petitioner, Martin, and Thomas Di Francesco, drove to the international border in south San Diego, California to test-fire a gun Luna was interested in buying. The foursome walked down a flight of stairs that led to an unpaved road along a river bed. After about 20 yards, Martin left the group and walked up an embankment. Petitioner walked into some bushes. Martin suddenly turned and fired a gun at Luna. As Luna turned to run, Martin shot him in the back. Luna continued running. Martin chased Luna while continuing to fire shots.

Petitioner came out of the bushes and also started chasing Luna.  Later, Martin and Petitioner returned to where Di Francesco was standing and the three drove to Spring Valley, California.

On April 9, 2004, a bicyclist on International Road in South San Diego discovered Luna's dead body underneath a piece of carpet in an area of brush.  It was determined that Luna had been dragged to that area and that multiple gunshot wounds had caused his death.

### III.  DISCUSSION

Where, as here, the case has been referred to the Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636, a district judge "may accept, reject, or modify the recommended disposition."  Fed. R. Civ. P. 72(b); *see* 28 U.S.C. § 636(b)(1).  Parties must file "*specific* written objections" when objecting to a Report and Recommendation.  Fed. R. Civ. P. 72(b)(2) (emphasis added); *See also* 28 U.S.C. § 636(b)(1).  District Courts may review *de novo* those portions of a report where Petitioner identifies a possible error or to which Petitioner specifically objects.  *United States v. Remsing*, 874 F.2d 614, 616 (9th Cir. 1989).

"Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*."  *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (internal citations and quotations omitted) (emphasis in the original).[2]  As the Fourth Circuit stated:

> [A] party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection. . . .  To conclude otherwise would defeat the purpose of requiring objections.  We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report.  Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered.  In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id*. at 622.  Here, Petitioner submits ten objections seeking *de novo* review by this Court.

---

[2] *See Velez-Padro v. Thermo King De Puerto Rico, Inc.*, 465 F.3d 31, 32 (1st Cir. 2006) ("Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b).").

However, nine of Petitioner's ten objections are blanket objections to the magistrate's conclusions and fail to provide cogent reasons in support of the objections. For instance, Objection No. 5 states, "Petitioner objects to the Magistrate's findings that there was sufficient evidence to prove beyond a reasonable doubt that petitioner was guilty as an aider and abettor in the murder of Luna." While Objection No. 10 reads, "Petitioner objects to each and every factual finding made by the Magistrate necessary for the above determinations."

"Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review." *Lockert v. Faulkner*, 843 F.2d 1015, 1019 (7th Cir. 1988). In the instant case, Objections 1-7 and 9-10 set forth little more than "I object" as they fail to offer particularized reasons. The Court therefore declines to undertake a *de novo* review of those grounds. Objection No. 8 adds information, but not enough.

Objection No. 8 reads: "Petitioner objects to the Magistrate's use of evidence of the dismissed Arnquist carjacking to argue that its joinder with the Luna murder was not prejudicial. The state court dismissed the Arnquist charge because the only evidence of petitioner's involvement came from co-defendant Martin's testimony." While this objection adds information, an objection must be, "clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Objection No. 8 does not demonstrate how joinder of the Arnquist carjacking and the Luna murder amounted to error. It does not explain why joinder violated Petitioner's 5th and 14th Amendment rights. Although Petitioner recites why the California Court of Appeal dismissed the Arnquist charge, Petitioner fails to explain how use of the dismissed evidence prejudiced Petitioner. Moreover, the Report and Recommendation considers in depth the claim of improper joinder and the U.S. Supreme Court decision discussing what constitutes a constitutional violation under *United States v. Lane*, 474 U.S. 438 n.8 (1986). *Lane* holds that joinder may be entirely proper, and that even misjoinder does not, in itself, violate the Constitution. *Id.* Even in cases of misjoinder, there is no constitutional violation unless it renders the trial fundamentally unfair. *Id.*; *see also Flores v. Smelosky*, Case No. 08cv1086 BEN (BLM) (S.D. Cal. Mar. 29, 2010) (Order adopting Report & Recommendation setting forth *Lane* analysis for state claims of misjoinder).

The Report correctly applies this standard and finds that there was no improper joinder and that even if there was it did not render Petitioner's trial fundamentally unfair. *See* Report and Recommendation, at 17-21. At least one court has considered *Lane* in the state habeas context and found that since *Lane* considered misjoinder only under the Federal Rules of Criminal Procedure it does not announce any constitutional rule binding on the states. *Collins v. Runnels*, 580 F. Supp. 2d 1000, 1012-13 (E.D. Cal. 2008) ("In essence, the effect of mutually exclusive defenses on due process is an open question in Supreme Court jurisprudence. In the absence of a holding of the Supreme Court governing the constitutional standard for severance, this Court cannot find that the California Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law. Petitioner's application accordingly fails under the onerous standard imposed by AEDPA."). This Court has reviewed Petitioner's claim that the joinder of the Luna and Arnquist charges violated his constitutional rights. If *Collins* is correct, there is no clearly established federal law on joinder and Petitioner's claims must fail. On the other hand, if *Lane* does set forth a federal constitutional standard for the states, this Court finds that the Magistrate Judge correctly evaluated Petitioner's claims of misjoinder and adopts the Report and Recommendation.

## IV.  CONCLUSION

The Court has reviewed the Petition, Answer, Traverse, Report and Recommendation and the Objections. The Report is exhaustive and well-reasoned and this Court agrees with the recommendation of the Magistrate Judge. Accordingly, the Court **ADOPTS** the Report and Recommendation in its entirety and **DENIES** the petition for writ of habeas corpus. The Clerk shall close the file.

IT IS SO ORDERED.

DATED:  November 18, 2010

Hon. Roger T. Benitez
United States District Judge